E-FILED
Monday, 09 March, 2015 10:20:01 AM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| AGRIDYNE, L.L.C., an Illinois limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 12-3213 |
| LUCILLE BOSTON d/b/a SERVICES UNLIMITED, and/or SERVICES UNLIMITED, S.A. DE C.V., a Mexican corporation | ) ) ) ) ) | |
| Defendant. | | |

CONSOLIDATED WITH:

| | | |
|---|---|---|
| SERVICES UNLIMITED, S.A. DE C.V., a Mexican corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 12-3314 |
| AGRIDYNE, L.L.C., an Illinois limited liability company, | ) ) ) | |
| Defendant. | | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Pending before the Court is the Motion of Lucille Boston to Dismiss Plaintiff Agridyne L.L.C.'s Second Amended Complaint for Lack of Personal Jurisdiction.

I. BACKGROUND

This case has a lengthy procedural history. The Court's subject matter jurisdiction is based on diversity of citizenship. The dispute between the parties concerns a Railcar Lease and Service Contract.

This action was initiated by Agridyne, as Lessee, against "Lucille Boston d/b/a Services Unlimited" ("Boston") as Lessor, by Complaint filed August 16, 2012. See Case No. 3:12-cv-3213-RM-JEH. On September 4, 2012, Boston filed a Complaint in the United States District Court for the Central District of California ("California case"), on behalf of a Mexican corporation, i.e., Services Unlimited, S.A. de C.V. (the "Mexican corporation"). On November 20, 2012, the Central District of California transferred the California case to this Court. See Case Number 3:12-cv-3314-RM-JEH, Doc. No. 28.

On December 12, 2012, in the first case, Agridyne filed its Second

Amended Complaint adding the Mexican corporation as a party Defendant. Boston previously moved to dismiss the First Amended Complaint for lack of personal jurisdiction. The Court did not rule on the merits of that motion because Agridyne was permitted to file a Second Amended Complaint and did so on October 15, 2013. See Doc. No. 34.

On February 3, 2014, the two cases were consolidated. See Doc. No. 45. Subsequently, Boston moved to dismiss this action for lack of personal jurisdiction.

## II. DISCUSSION

In support of her Motion to Dismiss for Lack of Jurisdiction, Boston contends she has never had a "continuous and systematic presence" in Illinois. Relying on International Shoe v. State of Washington, 326 U.S. 310 (1945), Boston alleges that the exercise of jurisdiction in this case would be inconsistent with "traditional notions of fair play and substantial justice" because she lacks sufficient contacts with this State. See id. 316-17. In fact, Boston states she has never had any presence in Illinois. Boston claims that Agridyne initiated and solicited the contract

3

negotiations with Services Unlimited in this case. She has attached her Affidavit to the motion in support of these assertions. Consequently, Boston contends there is no personal jurisdiction.

A plaintiff has the burden of establishing personal jurisdiction when it is challenged by the defendant. See Northern Grain Marketing, LLC v. Greving, 743 F.3d 487, 491 (7th Cir. 2014). When a defendant's motion to dismiss is based on the submission of written materials and no hearing is held, the plaintiff "need only make out a prima case of personal jurisdiction" to meet its burden. See id. (citations omitted). In these circumstances, factual disputes are resolved in favor of the plaintiff. See id.

Agridyne notes that in transferring the California case, the Central District of California stated it was unclear whether Boston or the Mexican corporation was the true Lessor. That court observed:

> Plaintiff [Services Unlimited, S.A., DE C.V., a Mexican corporation] argues that the parties are not substantially similar because Plaintiff, a Mexican corporation, is separate from Plaintiff's President and the Defendant in the Illinois action, Lucille Boston. The court disagrees. It remains unclear whether Boston, doing business as Services Unlimited, or Plaintiff, operating under the trade name Services Unlimited, was a party to the lease agreement with Agridyne. The lease itself makes no

4

> reference to the Mexican corporation, while Boston appears to have signed the majority of the riders individually, without reference to her position as a director of any corporation. Regardless whether Boston herself or the Mexican corporation is the relevant party, the two are sufficiently similar to warrant invocation of the first-to-file rule.

Case No. 12-cv-3314, Doc. No. 28, at 4. Following the Motion to Drop "Lucille Boston d/b/a Services Unlimited" as a party and Memorandum in Support thereof [Doc. Nos. 53 & 54], this Court, in a Text Order entered on April 21, 2014, found that based on the record at the time, it was "unable to conclude that Lucille Boston was joined improperly as an individual Defendant."

Upon reviewing the record, including Boston's Motion and Memorandum with Attachments and Agridyne's Response, the Court concludes it remains unclear today whether the Lessor was Boston or Services Unlimited. As Agridyne alleges, moreover, there are also a number of unanswered questions about Services Unlimited.

Additionally, Boston's Motion to Dismiss does not address a number of admissions made in her California Complaint and allegations which are set forth in the Second Amended Complaint in this case. Boston's Motion

does not address several factual allegations, including: (1) Agridyne negotiated the Lease while in Illinois; (2) All but one of the 40 leased railcars were delivered to Agridyne in Illinois; (3) Boston had several conversations with Agridyne employees located in Illinois concerning railcar maintenance, railcar management and railcar mileage; (4) Railcar repairs under the lease were performed in Illinois; and (5) The invoices for the railcars were sent to Agridyne in Illinois.

The Complaint filed in the California case stated that Jim Timberlake, an Agridyne representative, negotiated the Lease with Boston over the course of two weeks in September of 2004. According to his Declaration, Timberlake conducted the negotiations for Agridyne by phone from the Agridyne offices located in Springfield, Illinois. Boston prepared the Lease and sent it to Illinois for execution by Timberlake in Illinois.

Additionally, paragraph 4 of the Lease provides that Agridyne would take possession of the railcars at its location in Chillicothe, Illinois. During the course of the lease, Services Unlimited delivered 39 railcars to Agridyne in Illinois. Throughout the term of the Lease, the monthly lease bills were

sent to Agridyne's office in Springfield, Illinois. The bills were paid by mailing checks from Agridyne's principal place of business in Springfield, Illinois. The checks were made payable to "Services Unlimited" and were deposited in the bank account of "Services Unlimited." Neither the bills sent by Services Unlimited nor the checks and their endorsements mention or reference any corporation.

In the Complaint in the California case, Boston acknowledges having conversations with several Agridyne employees in the traffic section about railcar repairs, railcar mileage and management of the railcars. Boston names those employees, all of whom were located in Springfield, Illinois.

During the term of the lease, Agridyne replaced seven valves on the leased railcars and repaired 22 valves. All of this occurred at Agridyne's facility in Illinois. Boston also sent bills requesting reimbursement for repairs to loading and unloading devices to Agridyne in Illinois. These actions which occurred in Illinois were contemplated by the Lease executed by Boston.

Additionally, the Lease provided that Agridyne could not make

7

material alterations to any railcars without prior written consent to the Lessor. In 2009 and 2010, Boston was contacted by Agridyne by telephone and asked if Agridyne could remove the internal coils from the railcars leased by Agridyne. Boston granted Agridyne permission. The coils in the railcars were removed by Agridyne in its shops in Illinois.

A federal court sitting in diversity looks to the personal jurisdiction law of the state in which the court sits to determine if it has personal jurisdiction over a defendant. See Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir. 2002).

A number of factors are relevant in determining whether an entity or individual has transacted business in Illinois. See 735 ILCS 5/2-209(a). These include, "The making or performance of any contract or promise substantially connected with this State." 735 ILCS 5/2-209(a)(7).

In Vikron Ltd. Partnership v. Program Data, Inc., 326 Ill. App.3d 111 (2d Dist. 2001), the Illinois Appellate Court considered a number of factors, including (1) where the contract was formed; (2) where performance was to take place; and (3) where the contract was negotiated.

See id. at 117-18.

The contract was negotiated over the telephone. Boston was located in California and Jim Timberlake was in Illinois. Boston sent the Lease to Timberlake in Illinois, where the contract was executed. Performance of the contract was to take place in Illinois. Almost all of the leased rail cars were delivered to Illinois. Replacement and repair of loading and unloading devices occurred in Illinois, as did modifications to the railcars. There were additional communications by Boston with Agridyne employees located in Illinois concerning car repairs, car mileage and management of the railcars. This was an ongoing commercial relationship between the parties which started in 2004. The Lease was eventually extended to 2016.

Upon considering all of the facts and applying the relevant factors, particularly the substantial performance of the contract in Illinois, the Court concludes that jurisdiction exists under the Illinois long-arm statute.

The Illinois long-arm statute contains a "catch-all" provision which permits a court to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United

9

States." Citadel Group Ltd. v. Washington Regional Medical Center, 536 F.3d 757, 760-61 (7th Cir. 2008) (quoting 735 ILCS 5/2-209(c)). Accordingly, "the statutory question merges with the constitutional one–if Illinois constitutionally may exercise jurisdiction over a defendant, its long-arm statute will enable it to do so." Northern Grain, 743 F.3d at 491-92.

"The Illinois constitution requires that jurisdiction be asserted only where "it is fair, just, and reasonable . . . considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." See Citadel Group, 743 F.3d at 761. Additionally, if personal jurisdiction is appropriate under the Illinois Constitution, it almost certainly will meet federal due process requirements. To meet federal due process requirements, a "defendant's contacts with the forum state must directly relate to the challenged conduct or transaction." Northern Grain, 743 F.3d at 492 (internal quotation marks and citations omitted). "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that

state, and (2) the alleged injury arises out of the defendant's forum-related activities." Id. (citations omitted). In other words, "[t]he defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that he could be haled into court there." Id.

Upon construing all of the facts in Agridyne's favor and, for the reasons stated herein, the Court concludes Agridyne has made out a prima facie case of personal jurisdiction based on Lucille Boston's contacts with Illinois. Based on the extent of Boston's business dealings in Illinois, the Court concludes it would have been reasonable for her to anticipate being haled into court. Accordingly, personal jurisdiction exists under the Illinois long-arm statute, the Illinois constitution and the federal constitution.

Ergo, the Motion of Lucille Boston to Dismiss Agridyne L.L.C.'s Second Amended Complaint for Lack of Personal Jurisdiction [d/e 59] is DENIED.

This action is referred to United States Magistrate Judge Jonathan E. Hawley for the purpose of scheduling a discovery conference.

ENTER: March 5, 2015

FOR THE COURT:

                                                        <u>s/Richard Mills</u>
                                                        Richard Mills
                                                        United States District Judge