# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| AGRIDYNE, L.L.C., an Illinois limited liability company, | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | |
| v. | ) ) | NO. 12-3213 |
| LUCILLE BOSTON d/b/a SERVICES UNLIMITED, and/or SERVICES UNLIMITED, S.A. DE C.V., a Mexican corporation | ) ) ) ) ) | |
| Defendants/Counter-claimants. | ) ) | |

| | | |
|---|---|---|
| CONSOLIDATED WITH: | ) ) | |
| SERVICES UNLIMITED, S.A. DE C.V., a Mexican corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 12-3314 |
| AGRIDYNE, L.L.C., an Illinois limited liability company, | ) ) ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

Pending is the Motion of Plaintiff/Counter-Defendant Agridyne L.L.C. to Strike or Dismiss the Answer and Counterclaim of Defendants-Counter-Plaintiffs Services Unlimited, S.A. DE C.V., a Mexican corporation.

## I. BACKGROUND

This case has a lengthy procedural history. The Court's subject matter jurisdiction is based on diversity of citizenship. The dispute between the parties concerns a Railcar Lease and Service Contract.

This action was initiated by Agridyne, as Lessee, against "Lucille Boston d/b/a Services Unlimited" ("Boston") as Lessor, by Complaint filed on August 16, 2012. See Case No. 3:12-cv-3213-RM-JEH. On September 4, 2012, Boston filed a Complaint in the United States District Court for the Central District of California ("California case"), on behalf of a Mexican corporation, i.e., Services Unlimited, S.A. de C.V. ("Services"). On November 20, 2012, the Central District of California transferred the

California case to this Court. See Case Number 3:12-cv-3314-RM-JEH, Doc. No. 28.

On December 12, 2012, in the first case, Agridyne filed its Second Amended Complaint adding Services as a party Defendant. Boston previously moved to dismiss the First Amended Complaint for lack of personal jurisdiction. The Court did not rule on the merits of that motion because Agridyne was permitted to file a Second Amended Complaint and did so on October 15, 2013. See Doc. No. 34.

On February 3, 2014, the two cases were consolidated. See Doc. No. 45. Subsequently, Boston moved to dismiss this action for lack of personal jurisdiction. In an Opinion entered on March 9, 2015, that motion was denied. See Doc. No. 65.

Lucille Boston was granted two extensions of time in which to file an Answer to the Second Amended Complaint. On June 26, 2015, Boston filed an Answer to the Second Amended Complaint and Counterclaim. See Doc. No. 73.

Agridyne filed a Motion to Strike or Dismiss the Answer and

Counterclaim and Memorandum in Support.  See Doc. Nos. 74 & 75. Boston has filed a Response to the Motion.  See Doc. No. 76.

## II. DISCUSSION

A. Rule 8 pleading requirements

Agridyne alleges that Services should not be a party to the Answer because it has already answered the Second Amended Complaint.  Boston agrees.  Therefore, Services will be stricken as a party to the Answer. Services's first-filed Answer is deemed to be its only Answer.

Next, Agridyne asserts that Boston's Answer, which consists of 28 paragraphs and ten pages along with seven Affirmative Defenses, do not comply with the rule that defenses be stated in "short and plain terms." Fed. R. Civ. P. 8(b)(1)(A).  The Court disagrees and concludes that the Answer and Affirmative Defenses are consistent with the applicable rule.

In its previous Order in Case Number 12-3314, the Court found that Services's Complaint was sufficient to place Agridyne on notice of the claim and grounds alleged and stated:

> Although the inclusion of extraneous information in the Complaint may result in the Defendant having to expend more

>resources in drafting a responsive pleading, the Court believes that, consistent with Rule 8(b), the Defendant can respond appropriately without incurring a significant burden.

Doc. No. 49, at 7. The Complaint at issue in that Order consisted of 68 paragraphs and 33 pages.

Although the pleading here is quite lengthy, it is not as verbose as the prior Complaint. Boston's Counterclaim consists of 76 paragraphs and 24 pages. Generally, the paragraphs are shorter and appear to contain less extraneous information than the prior pleading. While it may not qualify as a "short and plain statement," the allegations appear to be more concise and direct. Additionally, Agridyne states that there is significant overlap between the prior Complaint and Counterclaim. Therefore, its previous Answer may be of some assistance in preparing to answer the Counterclaim. Accordingly, the Court declines to strike the Answer or Counterclaim on the basis that they include excessive or extraneous information and do not comply with Rule 8.

### B. Rule 12(f) and immaterial or scandalous allegations

Agridyne also alleges that paragraphs 26 and 27 of the Counterclaim

should be stricken as being immaterial, impertinent and scandalous in violation of Rule 12(f).  Paragraph 26 reads:

> On or about January 7, 2015, the United States Occupation Safety and Health Administration (OSHA), Region 5 cited Agridyne for three willful and eight serious safety violations in connection with the death of two Agridyne employees who were overcome by dangerous hydrogen sulfide gas in June, 2014 while cleaning out corn steep residue from a tank car on Agridyne's tracks at Pekin, IL.  On information and belief, corn steep is a liquid feed.

Paragraph 27 reads:

> That unusually strong OSHA citation establishes that Agridyne was not properly cleaning its leased cars.  Such inferior cleaning resulted in substantial residue being left in the cars.  That residue became caustic when not timely removed, and corroded the cars.  Poisonous fumes from the contents of the cars corrode the steel tanks in the cars when residue remains in the cars as a result of improper cleaning.

Doc. No. 73, at 17-18.  Agridyne contends that paragraphs 26 and 27 are immaterial and scandalous and do not relate to any other portion of the allegations or to Services' and Boston's claims against Agridyne.  Moreover, the allegations are an attempt to prejudice Agridyne and should be stricken.

Based on the response, the allegations above could be interpreted to be related to other portions of Boston's Counterclaim.  Additionally, there

is no concern at this stage of the litigation about prejudicing Agridyne in the eyes of a jury. Accordingly, the Court declines to strike paragraphs 26 and 27 on the basis that they include immaterial, impertinent and scandalous matters.

### C. Rule 9(b) and fraud pleading requirements

Agridyne further asserts the second cause of action does not meet the pleading requirements for fraud under Rule 9(b) of the Federal Rules of Civil Procedure. The Second Cause of Action purports to allege "Bad Faith, Malice, Destruction of Business, Fraud, and Deceit." It incorporates the allegations contained in the previous 74 paragraphs and further claims that "Agridyne acted knowingly and willfully in bad faith and with malice, fraud, and deceit in such manner as to cause destruction of SU's entire railcar business and loss of Boston's retirement income and premature sale of her personal assets" in several different respects.

"In alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This is because a claim of fraud can do significant harm to a business's reputation. See

Payton v. Rush-Presbyterian-St. Luke's Medical Center, 184 F.3d 623, 627 (7th Cir. 1999). Accordingly, the claimant must perform a pre-complaint investigation to assure there is some basis for alleging a fraud claim. See id. "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading ordinarily requires describing the who, what, when, where, and how of the fraud." Camasta v. Jos. A. Bank Clothiers, 761 F.3d 732, 737 (7th Cir. 2014).

Agridyne contends there is no particularity within the cause of action or the factual allegations to support a fraud claim. No statement describes precisely what was said, who said it and when it was said. Many of the allegations allege a failure "to notify . . ." on the part of Agridyne. See Doc. No. 73 ¶ 76(a)-(d), (f). Paragraph 76(e) alleges "misdescribing the nature of the transportation of the leased cars as moving to and from railcar repair facilities for HM-201 testing as subject to freight charges payable by SU, when, in fact, such cars were entitled to such transportation without charge."

Lucille Boston contends that paragraphs 58 through 60 address

Agridyne's alleged knowing misrepresentation regarding what was shipped. This was relied upon and resulted in damage. Boston alleges that the lease would not have been entered into if this information had been disclosed. Paragraphs 58-60 state as follows:

> 58.  When the lease of the cars was being negotiated, Agridyne's President assured Boston that the commodity to be shipped in the cars was suitable for transportation in inner coiled heated cars, that such commodity would not damage the cars, and that Agridyne would maintain the cars in good condition, replace or repair all loading and unloading devices at its own expense, and obtain insurance that would protect SU from loss or damage to the cars.
>
> 59.  SU relied on those material assurances in agreeing to lease the cars to Agridyne. In the absence of such assurances, SU would not have leased the cars to Agridyne. SU's reliance was justified because of the apparent authority of Agridyne's President to bind the company.
>
> 60.  At the time that those assurances were made, Agridyne's President knew that it was likely that the liquid feed or other commodities to be shipped in the cars, such as Proteferm, would rust and corrode the interior coils in the cars, and that when heated, the commodities would become caustic and that if the residue was not cleaned out of the cars, it would become caustic and damage the tank shell, such that the assurances that he made to SU were false.

Doc. No. 73, at 25. The Court concludes that the paragraphs above when

considered in conjunction with the other allegations in the Counterclaim meet the requirements of Rule 9. Accordingly, the Court declines to strike the second cause of action.

### D. Rule 12(f) redundancy

Next, Boston contends that portions of the 2015 Counterclaim should be stricken under Rule 12(f) for redundancy. Specifically, the 2012 Complaint and 2015 Counterclaim essentially allege the same causes of action and Agridyne claims another answer would be burdensome and expensive. Because the rule refers to redundant material within the same document, the Court declines to strike the Counterclaim.

Ergo, the Motion of Plaintiff Agridyne, L.L.C. to Strike or Dismiss the Answer and Counterclaim of Services Unlimited and Lucille Boston [d/e 74] is ALLOWED in part and DENIED in part.

It is Allowed to the extent that Services Unlimited is Stricken as a party to the Answer.

It is Denied in all other respects.

Agridyne, L.L.C. shall file an Answer in accordance with the Federal

Rules of Civil Procedure.

ENTER: November 9, 2015

        FOR THE COURT:

                                          s/Richard Mills
                                          Richard Mills
                                          United States District Judge